I would like to begin by asking to save half my time for a bottle. So I'm doing my best to keep it at seven minutes. All right. If we're not engaged in questions at that point, you can do so. Thank you. Before I get started, I want to make sure that I make the point that I'm asking the Court, as we did in our brief, to not only reinstate the case, but to take a look at the First Amendment claim, the 1102.5 claim, as well as the other equal protection claim of taking of property. Now, having said that, the Court issued a directive asking that we look at McDonald and Calderon. And I'd like to speak to that, but I want to put it in context, if I might. The basic of our judicial system is that if you're going to be charged with something, it'd be a violation of law. Here, there's six charges that are brought against him. And the six charges all deal with the one you back up. None of them deal with the failure to do a good job as a cop. As a cop, he was outstanding. You have one entire excerpt of record, all of the good stuff he was doing on the street. Nobody's ever complained about that. It's all about him talking, about him saying things that they don't want heard. Now, I'd say that in the context of the case. Well, I think there is the other incident that there's a claim that he asked someone to show his breasts and he got a complaint on that, and the arbitrator did find that. That was done, that case was done before this, and he got a suspension for 40 hours by a prior arbitrator. Right. So that, you know, is there something about double jeopardy or whatever? I don't know. Well, no. I think discipline's probably progressive. Okay. Let's talk about the charges. The sixth charge is contained on excerpt of record 2897. Well, maybe, though, I'm sorry, I kind of derailed you. We wanted you to talk about McDonald and its applicability, correct? You were directed to do so, so why don't you do that? Okay. The first part I want to suggest of McDonald is consistent with what McDonald said. The judge, the superior court, court of appeal, any real judge, Article III judge, is entitled to and looks at the law, the law of the land, whereas in McDonald it says the arbitrator looks at the rules of the shop. The arbitrator's not concerned with the law of the land. So in this instance, we come up with, and here's the point I was making about the speech, the things that he said he was doing, the things that they told him not to do, are all contrary to our notions of free speech. They're all contrary to 1102.5 of the California Labor Code. These are things that an employee can and is entitled to talk about. You issued probably six cases that I've read so far that all talk about, like, the guy who's driving the steamships up in Seattle, Washington, and he says, hey, you're giving me bad pads, this is terrible, you're corrupt in how you're doing it. The trial court in this instance said, you don't get a first-man claim because he's a cop, he has to report crimes. But this issue is not about crimes. This is about corruption in the police department. So I dare say it's my humble opinion that the trial court got it wrong. If you read Judge Demorell's opinion, he says everywhere it says he's a cop, he's required to report crimes. This is not about crime. This is about corruption inside the police department. It's a corruption inside the city that he notes and he brings to their attention. That is First Amendment according to every case I've seen from the Ninth Circuit so far. Second, and so that's why it dovetails into the McDonnell case. McDonnell says, hey, you've got the arbitrator talks about what's going on in the shop. These are the rules of the shop. You violated the rules of the shop, et cetera. They don't speak to First Amendment. They don't speak to what your rights are overall. And the biggest thing in equal protection in all of this is if you're going to be charged with something, it better be a lawful charge. If I'm charged with, I mean ---- I think the reason, I think that the perception was that McDonnell might be more favorable to you than White, and that's why you were asked to talk about it, but I'm not seeing you tie that together here. Well, we got ---- let me ask you this. We got a letter from the appellees, said that McDonnell was raised below and that And you haven't raised it in your ---- and haven't relied on it to your appeal. Now, do you disagree with that letter? No. I disagree with part of that letter. We raised McDonnell below. We cited in both motions to this ---- That's what the letter says. That's what the letter says. Yes. We have not raised it. We did not use the words McDonnell in this. But the same theories, the same other ---- the associated cases that all speak to the same point we raised. So, yes, we did not raise the McDonnell case, but we did talk about the ---- whether or not the arbitrator is in a position to rule on this, whether or not the arbitrator rules on the rules of the shop versus the law. Having said that, what I ---- I hope that answered your question. Well, I want to speak to the countervailing, the argument that White is ---- somehow gives a city manager, because that's who made the decision here, the city manager, the right to step up and say, I'm deciding everything, I haven't heard any testimony and I am the prosecutor, by the way, as the city manager, I charge this guy, and I'll decide the case now without having heard any evidence. You don't agree with the White case, I take it? No, I don't know that the White case says what they say it says. Here's why. White had the first set of civil suit, court of appeal decision. Then there's a second suit and a court of appeal decision. And then the third suit, they say, stay it, we're going to hold off until we get a court of appeal decision on the second. Now, once a court of appeal decides it, in that case it says, we have raised ---- we have issued preclusion because it was all decided in case one and case two. This is not about an arbitrator making a decision. It's not about a city manager making a decision. I read the case three or four times and I'm going, where does it say a city manager gets to make a decision? It doesn't. It has four sets of State court results, two in the court of trial court, two in the court of appeals, that all turn on whether or not they can bring this third case, which is removed from State court to Federal court. And in that case, they say, sorry, it's been decided. Now, I went through and read it again. Maybe I'm ---- I read it again yesterday. I can't see where they get this. But all of the cases leading for McDonald, we even have a 1998 case by the U.S. Supreme Court, Judge Scalia again says when it ---- they said, your ADA claim should be in arbitration. And the Court said, no, wait a second. Arbitrators will decide the rules of the shop. Arbitrators will not decide the law. And that's the case here. Even if the arbitrager ---- if this was a judicial-like proceeding, which it's not when the arbitrator makes an advisory, all the cases, some of the cases we cite, we talk about the arbitrator making an advisory decision as opposed to a binding decision, says advisories don't count. It's not issue preclusion. It's not res judicata. Would you like to save seven minutes to rebut? Okay, thank you. Good morning. Good morning. May it please the Court, my name is Bruce Schott. I represent the defendants and the Respondents in this matter. Before I launch into McDonald and the Caldera case, I just wanted to summarize our position is that the district court judgment should be affirmed both on res judicata, but also on an independent and separate ground, and that is that no circuit court that has looked at speech-based retaliation, and we just heard from opposing counsel that this is all about speech, it's all about retaliation, it's all about speech, and we have to be clear in the first amendment that the only constitutional protection for speech-based retaliation is found in the first amendment. The Second Circuit, the Sixth Circuit, the Seventh Circuit, the Tenth, and the Eleventh have all ruled that the only constitutional protection is in the First Amendment. The Equal Protection Clause has no protection for speech-based retaliation. There also is Federal protection under Title VII, the Anti-Retaliation, Anti-Discrimination Clause. You also then could look at the speech-based claim under 1983, and that was summarily adjudicated by Judge Damrell. Unless there's a question, I'm going to get to the res judicata. Do you think he's abandoned his substantive due process claim where he says the arbitration was a fraud? Has he abandoned that? Does that no longer be for us? Well, I think he did raise it in his appeal brief, and I'm prepared to discuss that. That really goes to whether it is judicial in nature, whether the arbitration provision was. The issue for res judicata is was there an adequate opportunity for the participants to litigate the case? Well, and I guess, you know, I mean, White is the law of the circuit. So the question – and so we're bound by White, whatever White says. For advisory arbitration, yes. But White sort of assumed something and then got – but White went to court, and here they dismissed their court case, so we didn't – they didn't handle it by writ of mandate, right? They started to, but then they dismissed it. Right. And so it seems that part of the underpinning of White is the fact that the court, like, weighed in. And some of the concerns – The state court, Your Honor. The state court, yes. Under 1094.5. Right. Right. Because a lot of times these will go then to the – they go to the superior court, then they go to the state court of appeal. And I know I handled some of these when I was the superior court judge in the state court of appeal. And it seems to me here this advisory arbitration, it's a little bit of a concern that – so that the city manager then can just – even here the advisory opinion was against Mr. Eaton, but – What, a dentist? Was against him. He – Oh, yes, yes. It was against him. But let's say it had said that it was for Mr. Eaton, and then the city manager said, well, I don't really care. It's just advisory. Even though someone went through this and looked all – I'm just going to do whatever I darn well please. And so then you go to the writ process, and which the standard of review is – isn't really generally in favor of the – you know, it's hard to overturn these things sometimes. So I'm just wondering, this advisory – what's the point of this advisory thing if you can just do whatever you darn well please anyway? White did address that on the advisory arbitration. And White, the Ninth Circuit, said that the city manager is not unrestrained. He's constrained by the law based on a 1094.5 writ. He's constrained as well on the record. White states that where there is an adversarial proceeding before a neutral, there was in White, there was here, where there's an opportunity by both sides to subpoena witnesses, to call – to also introduce documents to cross-examine, where there's a written record. That – and it's an independent judgment rule on findings of fact in a 1094.5 writ. Independent judgment on the factual record. City – actually, in White, there was a arbitration ruling in favor of the employee. When it went to the city manager, he reversed it. In our case, the arbitrator, a neutral – I know, ruled against the employee. That's right. Let me get to McDonald's, because that's the only real difference between White and this case. And White is no longer controlling law, as we briefed before Judge England in the district court. It has been explained – White isn't? Did I say White? Yes, you did. My apology. I meant McDonald. Okay. The underlying assumptions in McDonald and the hostility towards arbitration is disregarded by the Supreme Court. It is not the law in the Ninth Circuit where you have unreviewed administrative adjudications, at least with respect to agency decisions in California, where there is an opportunity by the aggrieved party to appeal that to the superior court under Code of Civil Procedure section 1094.5, the factual findings of the administrative agency reviewed under an independent judgment rule. The decision itself, based on the record, is at discretion of the agency. And I want to also – and I want to address Caldera. I would call Caldera a pair of brown shoes at a black tie event. It really – it's an aberration in law in the Ninth Circuit, starting in 1986 with Plain and also with every case thereafter that looked at a California arbitration and administrative agency decision that was unreviewed in State court. The principles of res judicata were applied by that. But there is also a Supreme Court case, the University of Tennessee v. Elliott, that was decided two years after the McDonald case, where there was a 1983 action brought by a terminated African-American employee. He went to an arbitration hearing and lost and then went to Federal court, rather than appealing to the State court. The Supreme Court in Elliott applied the doctrine of res judicata to the unreviewed 1983 action. So although it didn't expressly reverse McDonald, I would go to starting Mitsubishi a year before Elliott that sort of the start of the about face of this hostility towards arbitration starts in Mitsubishi, where it said in Mitsubishi, 1985 case, we did cite it in the district court. The court said, we're well past the time when judicial suspicion of the desirability of arbitration and the competence of arbitral tribunals inhibited the development of arbitration as an alternative means of dispute resolution. I would fast forward then to 2009 in a case that we also cited below, 14 Penn Plaza, LLC v. Payette, 556 U.S. 247. McDonald relies on a 1974 case, Gardner-Denver. And in the Supreme Court case in 2009, the court said, quote, the Gardner-Denver line of cases included broad dicta that was highly critical of the use of arbitration for the vindication of statutory anti-discrimination rights. That skepticism, however, rested on misconceived views of arbitration that this Court has since abandoned. Sotomayor Well, counsel, let me ask you this, because I'm really more troubled by whether or not White precludes this case, because your adversary says that White involved – let me back up a minute. What we have here is a simple – is a simple arbitration proceeding that was not reviewed in State court, is that correct? And your adversary says, well, in White, where we said that res judicata can apply to arbitration proceedings, there had been a whole history of litigation in the courts, and that that – You're talking about in White? White, yes. And that that didn't happen here. So he doesn't read White as holding that a simple arbitration that wasn't – that where there was no State court review can preclude a Federal statutory claim. But you also had a simple arbitration, unreviewed, in University of Tennessee v. Elliott. And the Supreme Court applied the doctrine of res judicata against the 1983 action. Not so – Now, I see that. That was – so – But I want to – if – I didn't want to cut you off. Well, you did, but – but I'll let you, because I was cutting you off and you were answering her question. So you were – yes. So answer my question. I wanted to, yes, respond fully to Judge Schroeder. Then you have, in 1986, in the Plain case, and I want to quote from it. It says – and that was a corporation's commission arbitration on a shareholder's claim of violation of statute, a Federal statute. The Ninth Circuit said Plain could have sought State court review of the Commissioner's decision under 1094.5 California Code of Civil Procedure, but chose not to do so. If an adequate opportunity for review is available, a losing party cannot obstruct the preclusive use of the State administrative decision simply by foregoing her right to appeal. And I want to also – I don't know whether it was in that – I'm sorry. That language comes from which case? That's Plain. 797 Fed Second, the point page is 719. That language has been cited by three subsequent Ninth Circuit cases. Eilerich v. Remus was a whistleblower, First Amendment case. The plaintiff brought a 1983 action. The – went to an arbitration, but not appealed through a 1094.5 writ. The Ninth Circuit said, you're out. On res judicata, you should have exhausted your judicial remedies. Let me ask you this, though, sort of at an underlying concern, because it certainly – well, I think you do have – you mentioned University of Tennessee v. Elliott, which did say even if unreviewed, a State proceeding has a requisite – it can have the requisite judicial character. But on the res judicata part of it, in White, it was reviewed. And so I'm wondering, don't we – because here it wasn't really reviewed. Aren't we looking at whether it had the requisite judicial character? And then you do go to White as to how was the arbitration conducted. Right. But so that's why – I'm not so sure you get the res judicata preclusive effect, but we have to look at how the proceeding was conducted. Correct. And that's been fully briefed. I can respond, but how would you? Okay. I guess my concern, and this is just a little bit – I'm just wondering, assuming that – and this is only hypothetical here, but assuming that if we were to affirm and say that White applies here, some of the conduct here, you know, honestly – you know, and I did work as a deputy city attorney for a while, so I have a little experience with, you know, city managers and police departments and all of those type of things. Some of the things that he said do seem to be issues of public concern in terms of, like, you know, we're going to reward you for, you know, pizza and ticketing and, you know, if in fact maybe they were hiring felons or, you know, I mean, there was a guy that had the theft, and then they said, well, we're aware of it, and if the police chief were misusing his car, you know, bringing that up, it's – police officers don't have any rights, but then on the balancing side, he was obviously looked at as someone that was ruining the esprit de corps and that they – and undermining his supervisors and all sort of things. How – you know, how can we be assured in this that it just doesn't give, you know, police departments the right to sort of function in that anyone that says something that they don't – that might be, you know, that is corruption, that they're not going to be retaliated against and it will, you know, that this process will not mete it out? Wait. This case involved a police sergeant who was complaining. The allegation of insubordination was repeated acts where he complained to the shift that he supervised. In all of the First Amendment cases in the Ninth Circuit, they recognized that there is a chain of command. There's a good order and efficiency, and one of the admonitions that he violated was if you have a complaint, you complain up. This was a – But if you're complaining about corruption of the police chief and you go outside the chain of command, I don't think that could be – No, I agree with you. Conduct unbecoming or, you know, a violation. He didn't go outside. He went down to his subordinates to foment disruption. And when I hear this corruption allegation, I must – looking at the facts, he alleged that a purchase of a slice of pizza for an entire shift, including clerical, was a violation of law, but he alleged that to his shift. Well, the police department clearly was annoyed with this man and didn't really want to, and he got increasingly – Including, Your Honor, when he was found to have – a neutral arbitrator looked at his asking a subordinate who he was supervising past the midnight hour, alone in a car while listening to a pornographic radio – When he told everyone that nothing happened. That nothing happened. And, in fact, he said the police department was found to have lied about me. I was vindicated. That is expressing subordination. That is a personal grievance that he had. The other issue was he didn't allege that the chief of police was violating a rule using the car. He was complaining that the city, which was within its right, entered into an employment agreement with the chief of police to allow him to use the car for personal use. And, again, he complained not outside or not to the city council or not to a grand jury. He complained to his subordinates. All six allegations are complaining to the subordinates who he supervised, who have testified without dispute that they were fearful of him, that they lost – Well, I guess what – so what you're telling me is that this process, if, in fact, the facts were otherwise, that it doesn't give the police department carte blanche to – I'm saying that, Your Honor. – suppress someone, a malcontent or a person reporting corruption. Like Dahlia. They point out Dahlia. Dahlia v. Rodriguez, a completely different case where there was an outside investigation and there were threats against Dahlia. Okay. We've taken you in over time, so – Mr. Slide, just one question. When you say that, you know, the – McDonald was 84, University of Tennessee is 88. 1986. There's no discussion of McDonald in University of Tennessee, is there? There isn't. And I – it's a conundrum that I can't answer. I don't know why. I do know that Caldera refers to McDonald in the Gardner Denver case. But it seems to me if Justice Brennan thought that they were overruling his opinion of two years earlier, he would have said, well, wait a minute, it was unanimous, McDonald. All I can say is in the Penn case in 2009, they did say that that was a line of dicta in McDonald and Gardner Denver, and it's been disregarded. You let Lexis and Westlaw know, will you? Pardon? Yes. Thank you very much. Thank you. If I might, Your Honor, I have some concerns, first, about the process, because this is an arbitration. Usually, when we talk about administrative decisions of a body, it's the California Personnel Board, it's the city council for – this has not reached the level of what is generally considered to be a judicial or quasi-judicial determination. Well, what is it – how is it different from White? I mean, assuming we're – we have to follow White, how is it different from White? White, the court of appeal in the Ninth Circuit, said, all these claims that you're making today, you made in Case 1 and Case 2. You have judicial determination. But what was – but what type of arbitration was it in White? It was a nonjudicial arbitration. It was not an administrative. Was it an advisory? Yes. Arbitration? Yes. So it was the same type of arbitration that we have here. There's just a different procedural posture, because it went to the State court. The first case had an arbitration. The arbitrator ruled in favor of her, Ms. White. The city attorney – city manager said no. The second case, the same thing. They didn't follow what the arbitrator did. But there was no discussion that I ever saw that said either one of those decisions has a preclusive effect. I want to step to the next point, if I can. Judge Demorell says in his ruling, right out of the box, the first motion to dismiss, the court finds the action is not precluded. The arbitrator was empowered to adjudicate – was not empowered to adjudicate the rights of the parties before him. He offers only an advisory decision against the city manager. He follows, McDonald, he follows all the cases up till the first case. The decision, which is 2007. Now, counsel suggests to you that there's been no decisions that, by the Ninth Circuit, that reaffirmed the notion that you have to have a court determination for it to be res judicata. There is the case that I said – I tried to cite earlier of Wright. I'm losing it right now. Wright was the one by Judge Scalia in 1998. And Judge Scalia said in that case, no, you cannot force ADA or any of those claims into arbitration, that they are judicial in nature and they need to be resolved by a judge. Next. There – he says that the first motion to dismiss is not precluded.   It's not precluded, but it's not precluded, but it's not precluded, but it's not precluded, but it's not precluded, but it's not precluded, but it's not precluded. And so, you know, through – in the, you know, in the 2000s, you know, there's – they're not exempting any – you know, California's tried to have a lot of carve-outs and they keep saying, no, no, no, no, no, the FAA, you know, you got to go. Okay. The – I mean, it's the pro-arbitration, albeit 5-4 for the most part, is still very pro-arbitration. And there's no doubt. I'm not saying that arbitrations aren't valuable, et cetera. I'm saying that when you have an arbitration that is tainted by fraud for a start, that that arbitration should not be given full faith and credit. Second, more importantly, that you have here the prosecutor, the city manager, steps forward and says, I charge you. But why wasn't your remedy from that to go to the State courts? Because there is a lack of evidence that we had available to us at the time. We didn't have the discovery. Mr. Scheidt was withholding discovery that made it necessary. Once we got that discovery, we presented it to Judge Demorell, and Judge Demorell said, you have an equal protection case here. You have an – we had Tia Bastian. We didn't have any discovery of Tia Bastian. How can we go forward and make an equal protection case with the union, which is not going to throw the other employees under the bus for doing wrong, with my guy sitting there going, but it's done all the time? The union has no interest in putting their own people up under the scrutiny that are doing the same thing. And we don't have access to all the other people that are being handled. Okay. Why don't you kind of dial it back a little, you know? That's – we're not making a closing argument here. This is oral argument. Take a deep breath. Okay. Let's get back. We have a list of six other people that were in the situation similar to my client. There was no attempt to make any equal protection claims because we didn't even know about it. We didn't have discovery. The discovery we had was so minuscule, and the witnesses that we ultimately got, like Byron Green. Mr. Scheidt takes him in a room and puts his commander sitting in full uniform an inch away from him and intimidates him. He still says, yeah, the chief's driving around in a car that's outside city limits with his wife, et cetera. Is that information given which would have been helpful to Mr. Eaton? No. There's other instances of discovery that we didn't have, we didn't have an opportunity for. If we're going to litigate an equal protection case, then it has to be termed an equal protection case downstairs in the arbitration. You can't come along now and just say, well, we won, so we won, so we won, because that's what they're telling you. If we had the opportunity, if we had an opportunity to get discovery, if we could have put it in front of a neutral arbitrator, and then — Mr. Murray, you're just saying that arbitration, the root word is arbitrary, and it doesn't have the same capability of getting the correct result that a judicial proceeding has. Isn't that your argument? At a minimum. At a minimum. I agree with that. And what I'm also saying is you can't arbitrate something that's not before the House, not before the arbitrator. You can't arbitrate something when you deprive the opportunity to present, to get that evidence and put it on. You can't get that when the attorneys on the other side for the city are intimidating witnesses so they won't come forward, they won't even talk to us until well after you're fired. And do you think that was the distinction that Justice Brennan made in McDonald? Yeah. Yeah. Yeah. Because once we get to a federal judge, we have some level of protection. If we go before a federal judge, like we did in this instance, and he could sort out, he gave us discovery, he got us the opportunity, and then we looked at it and said, there's an equal protection case here. There is an equal protection case. And he found in his decisions that, yes, we can go forward on an equal protection because we have not a class of one, which was Willowbrook, but we have the other case with all these other employees that were subject to retaliation for having not been, quote, on the bus, on the team. I know my time is very short. I just, last two sentences. The case that we have here, we also put in our brief, we want, we're asking the Court not only to give us the opportunity to go to trial on that, but the First Amendment issues that we raised, and we explained why. 1102.5, and we explained why. And we also talked about the need to, he'll never be a cop again. He's been found dirty. That finding says he's dishonest, he's corrupt, he's malicious, et cetera. And unless we can prove that he's been deprived his opportunity to work in his chosen profession, this will happen again and again and again. And nothing will stop you, especially if you give the city manager carte blanche to say, oh, you can't go to Federal court, you can't complain elsewhere. If they get carte blanche, there isn't a cop in the State of California or elsewhere that has any sense of protection, because even when they go to arbitration, the city manager doesn't have to listen to the result. All right. Thank you for your argument. This matter will stand submitted.
judges: Pratt, Schroeder, Callahan